Judse Marshall
delivered the opinion of the Court.
When this case was here upon the writ of error of Reed and wife, this Court gave a construction to that *52 clause of the first section of the act of 1845: (Session Acts, 1844-5, page 34-5) which exempts from execution &c., (against bona jide housekeepers with a family) “all the spun yarn and manufactured cloth and carpeting manufactured by the family, necessary for the use of the family;” and, in effect, determined that the clause exempted manufactured cloth necessary for the use of the family, whether manufactured by the family or not. The former judgment urns reversed, because the verdict was founded on an instruction which assumed that in this case, in which the cloth taken by Sims under the execution, was made of cotton bought from a store, and was woven for Reed the debtor, not in his family, but by a weaver in the neighborhood, at her own house, it was subject to levy and sale, and therefore excluded from the jury the question whether it was necessary for the use of the family: MS. opinion, June. Term, 1849.
A decision of the Court of Appeals — settling the law arising in the case, and directing a new trial, is binding upon the Circuit Court ip a subsequent trial thereof in the Circuit Court.
On the last trial, an instruction was given conformable to the opinion of this Court, and that instruction is now alleged to be erroneous, and sufficient ground for reversing the judgment. By this assignment of error,- and by the argument relating to it, this Court is asked to reverse its own decision, rendered in the same case. It might be sufficient to say that the former opinion and mandate, being framed for the very purpose of prescribing the rule for a re-trial of the case, was not only binding upon the Circuit Court, but is binding upon the parties, and must be taken in this Court, as well as in the Circuit Court, to be the law of this case. But we go, further,.and say, that while itis obvious that the clause in question is susceptible of the construction given to it m this case, it ■ is also manifest that.that construction is, in’conformity with, and indeed required by the spirit-, and object of this and other statutes exempting proper-, ty'from execution. The general object of these statutes, and of that immediately in question was, not to encourage or even protect the manufacture of articles in or by the family of the debtor, though this may have *53 been incidentally in view, but to prevent his family from being deprived of such articles enumerated in the statute, as might be necessary for their use. The object was to preserve to them the means of living and of comfort, according to their circumstances. Carpet--ing is not an absolute or indispensable necessary; but where it is actually used, it is, in the ordinary sense, necessary to comfort, and if manufactured by the family, and'thus necessary for its use, it is protected. But, manufactured cloth is, in this country, absolutely necessary, not only to the comfort, but for the decent and indeed the actual subsistence of every family. The statute did not intend to discriminate in its protection of this necessary article, between such families as had a spinning wheel and loom, and could use them for the manufacture of their necessary clothing, and others, who, being unskilled in their use, or too poor to buy them, should, by their labor in other modes, purchase, the yarn and pay for its manufacture into cloth necessa-. ry for their use. The material point,'in view of the. statute, is that the cloth shall be for the use of the family, and that it shall be necessary for that use. And we construe the statute so that, without-violating its letter, its essential object may be effectuated.
The protection from execution oí cloth manufactured in a farn. ily, given by statute in Kentucky extends locarpe-tin£, though the thread may have been purchased and the weaving done by and in a different family.
If properly, ex empt from execution be taken by an officer, the defendanlcannot use force to regain the possession, though he •may regain it peacabiy — but if the defendant does peacabiy re gain the possession, the officer cannotjustify the. use of force to retake it.
If under the foregoing construction of the statute the levy was illegal, still if while the officer who made it, had the possession under the levy, or if while it was held by his bailee for him, Reod or his wife for him, attempted forcibly to take it from either, the officer or' his bailee might lawfully resist such attempt, using such force only, as was necessary to retain the possession. But if the levy was illegal, Reed or his wife for him, had a right to take the cloth peaceably or by consent of the bailee having the actual possession, and the officer had no right to use force in regaining the possession thus peaceably acquired. Indeed, if the levy was illegal, it gave him no right to retake the property even peaceably from the possession of the owner. . And certainly, if while it was in the manual and peaceable pos *54 session of Mrs. Reed, the officer took it from her forcibly, he thereby rendered himself liable not only for the trespass in thus taking it, hut also for the personal injury to Mrs. Reed, involved in this unlawful act.
Where the finding of the jury is in accordance with the weight of ihe evidence, and a contrary finding would have been contrary to the evidence, no reversal should lake place because the Court gave an instruction not direcllyupon the point upon which the ease should turn.
It seems that when the execution was levied, the cloth was in the loom, not quite finished ; that the officer left it with the weaver to keep for him, he paying her at the time for the'weaving; that when he returned on the next day, Mrs. Reed was in the loom house, the cloth had been cut from the loom by the weaver, and the end of it delivered by her to Mrs. Reed, who wrapped it several times around her arm, the other end being still on the beam. In this state of things, the officer coming in, took hold of the cloth between Mrs-Reed’s arm and the beam, and in pulling one end from her, and disengaging the other from the beam, committed the injuries to her person for which this action of assault and battery is brought.
Assuming the levy to have been unlawful, the right to maintain'ihe action depends essentially upon the state of the possession when the struggle for it commenced. If upon the evidence, there was any doubt upon this point, then the question as to the state of the possession, should have been submitted to the jury, and the instruction given for the plaintiffs ; placing their right of recovery exclusively upon the illegality of the levy, would be deemed erroneous, in excluding-this en-quiry as to the possession. But upon the faets just above stated, there can in our opinion be no room for doubt as to the state of the possession. If the facts be true, the possession was in Reed, the owner of the cloth which was in the hands of his wife, and the officer forcibly and illegally took it from her. And as these facts are stated by the only witness to the transaction, without contradiction or impeachment or cause for suspicion as to their credibility, we should not on the mere possibility that the jury might have disbelieved the witness, pronounce the instruction fatally erroneous in ncut submitting these facts to the jury. A verdict against *55 the facts thus proved would have been a verdict against the evidence as it now appeal's in the record. The submission of these facts to the jury as essential to the plaintiff’s recovery, would have been a mere formality, and the assumption of them by the Court, cannot therefore be regarded as a substantial error prejudicial to the defendant.
Taylor and Ballinger for plaintiff; Harlan for defendants.
The instructions asked for by the defendant, were inconsistent with the principles of this opinion, and there was no error in refusing them.
Wherefore the judgment is affirmed.